UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

CHRISTOPHER TRENTADUE,

Debtor.

Chapter 13

Case No. 13-29917

---

MEMORANDUM DECISION ON DEBTOR'S OBJECTION TO PROOF OF CLAIM

---

This matter came before the court on the chapter 13 debtor's objection to the priority status of the claim filed by Attorney Julie M. Gay, who represented the debtor's former spouse in state court proceedings. The debtor asserts that Ms. Gay's claim is not entitled to priority status because the debt stems from litigation misconduct on the part of the debtor and is not in the nature of a domestic support obligation. Ms. Gay alleges that her claim is entitled to priority status because the debt is a domestic support obligation under 11 U.S.C. § 507(a)(1)(A). The Court held various preliminary hearings regarding the claim objection and the parties filed briefs supporting their respective positions. This Court has jurisdiction under 28 U.S.C. § 1334 and this is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This decision constitutes the Court's findings of fact and conclusions of law under Fed. R. Bankr. P. 7052.

BACKGROUND

The debtor and Mary Beth Trentadue were divorced in Waukesha County on February 15, 2007. Since the entry of the divorce judgment, both parties have filed several motions in state court requesting changes in custody, placement, and child support, along with requests for findings of contempt. Numerous motions, oral arguments and evidentiary hearings were heard

by the family court. On November 13, 2012, the court rendered an oral decision on all matters pending at the time and entered Findings of Fact and Amended Order on May 16, 2013. Along with findings relating to the joint custody, placement, child support and health insurance, the state court found and ordered the following:

> Excessive trial time was expended on the issue of high school registration and attendance. All of the trial time on this issue was a result of the behavior and actions of Christopher Trentadue. With respect to Mary Beth Trentadue's requests for contempt regarding Christopher Trentadue's attempt to enroll the twins in Waukesha West, the court concludes that the court ended up spending certainly far more time that should have been spent relative to the issue.
> . . .
> The court finds the singularly most important and overriding factor in this case is the lack of the ability of the parties to communicate, share information, elicit input, and be fully apprised and be part of the process in making custodial decisions. Specifically, there is no ability for Christopher Trentadue to engage and put Mary Beth Trentadue into the process. The entire issue of changing high schools is an example of this inability. The same is not true of Mary Beth Trentadue who attempts to engage through emails.
> . . .
> Christopher Trentadue's conduct with respect to changing schools is a classic case of contempt. Considerable time was spent unnecessarily on this issue during trial. Christopher Trentadue's actions in this regard are a microcosm of the entire proceedings and indicates a consistent pattern of behavior: if he chooses to take action, he goes ahead and deals with consequences later, even during the pendency of the proceedings. This is not a hallmark of a shared decision making.
> . . .
> There was significant over-trial in this case by Christopher Trentadue. The issue of high school attendance, an issue created by Christopher Trentadue, expended a great deal of trial time. The issues involved children and school, essentially had at least a day, if not more so, of hearings, all of which was the unnecessary creation of Mr. Trentadue. The contempt hearings regarding school attendance, Mr. Haessly's testimony and other testimony appeared to take a couple of days. That would have been unnecessary if Christopher Trentadue had simply gone all the way back to the beginning of the year, had contacted Mary Beth Trentadue about addressing the issue but he never did, though he put in motion for the girls to be enrolled in Waukesha West which did not occur in violation of what was then and current court orders.
> 
> Mary Beth Trentadue objected to psychological exams that were requested by Christopher Trentadue. Christopher Trentadue also hired two additional experts, Dr. Fields, and Dr. Watson, neither of whom were ultimately helpful to Christopher Trentadue and, in reality,

> undercut Christopher Trentadue's position on a number of key issues. A significant number of witnesses called on behalf of Christopher Trentadue not only did not support him but undercut his position. Witnesses such as the Holders added little to the facts. On the last day of trial, Christopher Trentadue requested permission to present more testimony. The trial lasted beyond the expectations of the court. Christopher Trentadue has the right to present his case, but his behavior protracted the trial well beyond what was necessary. He raised issues that did not need to be addressed. Christopher Trentadue's desire to "win" and control resulted in additional legal fees for Mary Beth Trentadue. In addition, some matters were raised repeatedly to the court, i.e., motion to vacate the temporary orders, with no argument raised. Significant trial time was used to address the same issue.
> . . .
> Based upon the court's findings of over trial, the court order Christopher Trentadue to contribute $25,000.00 toward Mary Beth Trentadue's attorney fees. Payment shall be made directly to Attorney Julie M. Gay by May 15, 2013.
> . . .
> While there is sufficient basis in the record to grant Mary Beth Trentadue's motion to find Christopher Trentadue in contempt for clear violations of the court's orders, the court declines to find Christopher Trentadue in contempt. Rather, the court addresses this issue in its order related to over trial and attorney fees contribution.

(Waukesha County Circuit Court Findings of Fact and Amended Order, Case No. 06-FA-0971, ¶¶ 3, 16, 19, 27 of Findings of Facts and ¶¶ 4, 6 of Order, entered May 16, 2013).

The debtor did not pay Ms. Gay as ordered and filed this chapter 13 case on July 23, 2013. Ms. Gay filed a claim for $25,000.00 specifying that her claim was a priority domestic support obligation claim pursuant to 11 U.S.C. § 507(a)(1). The debtor objected to the claim, asserting the claim should be reclassified as a general, unsecured, nonpriority claim. On October 8, 2014, the state appellate court affirmed the circuit court's order awarding the debtor's former spouse reasonable attorney's fees for overtrial. The debtor's subsequent motion for reconsideration was denied by the appellate court on November 5, 2014. On December 4, 2014, the debtor submitted a petition for review to the supreme court, which was subsequently denied on March 16, 2015.

3

ARGUMENTS

The debtor contends that the state court award of attorney's fees is not in the nature of support and therefore is not entitled to priority claim status. *See In re Lopez*, 405 B.R. 382, 385 (Bankr. S.D. Fla. 2009). The court awarded attorney's fees with the intent to punish the debtor for misconduct in litigation, not for the purpose of enforcing the debtor's duty to support his former spouse and/or children. *See In re Attorney Fees in Yu v. Zhang*, 2001 WI App 267, 248 Wis.2d 913, 924 (Ct. App. 2001).

Ms. Gay argues the state court award of attorney's fees in the state court proceeding is a priority domestic support obligation because the underlying action related almost entirely to the children's welfare. *See In re Sullivan*, 423 B.R. 881, 883 (Bankr. E.D. Mo. 2010). The debtor's actions that gave rise to the fee award was his overtrial of issues relating to the high school enrollment of his minor children, a custodial matter regarding which parent should be allowed to make the educational decisions for the children.

DISCUSSION

Claims that are domestic support obligations are accorded special treatment under the chapter 13 provisions of the Bankruptcy Code. First, they are excepted from discharge under 11 U.S.C. § 1328(a)(2), which includes debts excepted from discharge under 11 U.S.C. § 523(a)(5), namely debts defined as domestic support obligations under 11 U.S.C. § 101(14A). Also, the Code provides that allowed unsecured claims for domestic support obligations owed to a person entitled to recover those debts from the debtor as of the petition date are entitled to first priority. 11 U.S.C. § 507(a)(1)(A). A chapter 13 plan is required to provide for the full payment of all claims entitled to priority under section 507. 11 U.S.C. § 1322(a)(2).

4

Section 101(14A) of the Bankruptcy Code provides that a domestic support obligation ("DSO") is:

> a debt that accrues before, on, or after the date of the order of relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is –
>     (A) owed to or recoverable by –
>         (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>         (ii) a governmental unit;
>     (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>     (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of –
>         (i) a separation agreement, divorce decree, or property settlement agreement;
>         (ii) an order of a court of record; or
>         (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>     (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).

Whether a payment qualifies as a domestic support obligation is a fact specific inquiry, and the claimant has the burden of proof to show that her claim is entitled to priority. *In re Clark*, 441 B.R. 752, 755 (Bankr. M.D.N.C. 2011) (citations omitted). The debtor contends that the claim does not satisfy the second element of section 101(14A) because the award is not "in the nature of alimony, maintenance, or support." He argues the intent of the state court judge in ordering this obligation is clearly set out in his decision, and that is to punish the debtor for unnecessary litigation. There is no mention of the former spouse's need for support.

When determining whether a claim is entitled to priority status under section 507(a)(1)(A), courts are not limited to only analyzing claim priority cases. Nondischargeability cases may be instructive as well. While bankruptcy law has historically included an exception from discharge for obligations in the nature of support, *see* 11 U.S.C. § 35(a)(7) (1978), the passage of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act altered the structure of priority claims and added the definition of "domestic support obligation" to the Bankruptcy Code for the purpose of giving more protection to creditors owed support debts. 11 U.S.C. §§ 507(a)(1)(A) & 101(14A). Along with the priority treatment of domestic support claims in sections 507(a)(1) and 1322(a)(2), the definition is also used in the discharge exception of section 523(a)(5), a section of the Code with copious legal analysis spanning many years. Fortunately, the statutory changes have not invalidated prior case law, only enhanced it. *See In re Papi*, 427 B.R. 457, 462, n. 5 (Bankr. N.D. Ill. 2010) ("Although the Bankruptcy Abuse Prevention and Consumer Protection Act, which applies to all cases filed on or after October 17, 2005, added the term 'DSO' to the Code, that term was developed from the definition of a nondischargeable debt for alimony, maintenance, and support in former Section 523(a)(5). Accordingly, case law interpreting the former version of Section 523(a)(5) remains relevant and persuasive here."). Thus, principles applied to whether an obligation would qualify as a nondischargeable domestic support obligation in both pre- and post-BAPCPA cases may also be useful in determining whether claims are entitled to priority, and will be considered here.

Generally, in deciding whether an award is a DSO, a bankruptcy court is not bound by a state court's prior determination of the character of such award, since the bankruptcy court may look behind the order to determine the real nature of liabilities. Alan N. Resnick & Henry J.

Sommer, 4 Collier on Bankruptcy ¶ 523.11[6] (16th ed. 2014); 8B C.J.S. *Bankruptcy* § 1073 (updated Sept. 2014). The intent of the state court – a factor properly considered in determining whether an obligation is a DSO – can best be found by examining three principal indicators: (1) the language and substance of the order or agreement in the context of the surrounding circumstances, using extrinsic evidence if necessary; (2) the parties' financial circumstances at the time of the order or agreement; and (3) the function served by the obligation at the time of the order or agreement. Henry J. Sommer & Margaret Dee McGarity, Collier Family Law and the Bankruptcy Code ¶ 6.04[2] (1991, Suppl. 2014); 9D Am. Jur. 2d *Bankruptcy* § 3646 (updated Aug. 2014).

Sometimes the court's intent in creating an obligation is not clear and must be inferred from surrounding circumstances that gave rise to the obligation. Not so here. The state court ordered the debtor to contribute $25,000.00 toward his ex-wife's attorney's fees because of his "overtrial," and the judge went into considerable detail faulting the debtor for his conduct leading up to the litigation and in the litigation itself. The debtor now wishes to take advantage of the judge's focus on his bad acts by having the award declared a non-DSO, intended as punishment rather than for the support of anyone. He does not dispute, however, that the fees were incurred in litigation relating to the care, custody, and welfare of the minor children of the marriage, although most of the issues litigated were noneconomic. Accordingly, this award was not "punishment," as the debtor tries to characterize it. That might have been the case if, for example, the debtor was sanctioned solely for disruptive behavior in court or withholding documents from discovery. However, this award was directly related to his unnecessarily protracted litigation over the welfare of his children and the detrimental effect of his conduct on

7

them. The purpose was to compensate for the harm he had done, but it was not punishment per se.

The financial resources of this debtor and his former spouse were not referenced when the state court rendered its decision regarding the "overtrial" award, but there are other references to their comparative economic circumstances in the record. It appears that the debtor's former spouse now has custody of the children and the debtor has been ordered to pay child support. For 2011, the debtor's child support payment was $1,616.82 per month; commencing January 2012, it was $1,405.38 per month; commencing December 2012, it was $1,150.34 per month; and commencing June 2013, it was $707.88 per month (Waukesha County Circuit Court Findings of Fact and Amended Order, Case No. 06-FA-0971, ¶¶ 20, 24, 26 of Findings of Facts). In 2010 and 2011, the ex-wife paid child support, presumably due to different placement of the children. While the state court noted that the ex-wife has "maintained a high level of employment without interruption," whereas the debtor "has had multiple jobs and periods of no employment," the latter was still ordered to make child support payments (Waukesha County Circuit Court Findings of Fact and Amended Order, Case No. 06-FA-0971, ¶¶ 5, 6 of Findings of Fact).

The fact that the former spouse might not be entitled to maintenance for herself or additional child support from the debtor does not end the inquiry. A few courts, discussed below, have focused on whether dollars are involved in family court litigation involving children, and support status was ruled out when financial factors were not involved. I find these unpersuasive. A better view was expressed in *In re Jones*, 9 F.3d 878 (10th Cir. 1993), in which the court held that the debtor's obligation to pay the attorney's fees of the former spouse incurred in a postdivorce custody action was in the nature of support and the fees were nondischargeable

8

under section 523(a)(5). The circuit court rejected the bankruptcy court's holding that a custody action is separate from a support action and held that in section 523(a)(5) "the term 'support' encompasses the issue of custody absent unusual circumstances." *Id*. at 882. As I stated in another context in an earlier case:

> Both economic and noneconomic factors can be vital to children's interests, and separating these factors is not realistic. Children's welfare is influenced by whom they live with, how much money the family has to live on, where they live and go to school (often dictated by finances), and countless other factors. Children are entitled to legally enforceable noneconomic support (such as visitation). . . .

*In re Lockwood*, 148 B.R. 45, 48 (Bankr. E.D. Wis. 1992).

Of course, the debtor is correct that not all attorney's fees awarded in family court proceedings are deemed domestic support obligations. In *Estate of Mayer v. Hawe*, 303 B.R. 375, 378-79 (E.D. Wis. 2003), the district court found that an award of attorney's fees charged to a chapter 7 debtor in probate proceedings was not a domestic support obligation under section 523(a)(5). The language of the probate court's order made it clear that the court did not impose the attorney's fees and costs on the debtor for the purpose of enforcing her duty to support her former spouse and disabled adult child. Rather, the order indicated that the court's intent was to deter and/or punish the debtor for pursuing litigation that the court considered "unreasonable," "inefficient," "wasteful," and "unnecessary." The probate court regarded the debtor's legal actions as serving "no apparent legitimate purpose," and it awarded fees and costs because of the "harm and prejudice" that resulted from such actions. *Id*.

Likewise, the bankruptcy court in *In re Lopez*, 405 B.R. 382, 385 (Bankr. S.D. Fla. 2012), found that an award of attorney's fees to the chapter 13 debtor's former husband in the parties' divorce proceedings, which the state court had indicated was based upon the debtor's bad faith

9

litigation misconduct, did not qualify as a "domestic support obligation," and the claim was thus not entitled to priority status. The award in this case for "overtrial" does not go so far into the realm of pure punishment.

On the other hand, the harm caused to children by unnecessary and protracted litigation was recognized by the court in *In re Rugiero*, 502 Fed. Appx. 436 (6th Cir. 2012), wherein a substantial attorney fee awarded to the mother in a custody dispute was deemed a domestic support obligation. As the court observed, "[w]ere it otherwise, a litigious boyfriend … could make life miserable for his girlfriend by waging a costly custody dispute over their children, one that the girlfriend might not be able to fend off based on her earnings alone. That is why many courts have treated fee awards as 'support' payments; it is the only way to allow some parents to vindicate their rights in court." *Id*. at 438. It is noteworthy that the court characterized the award as benefitting the children since the parents were never married. It was necessary to do so because an unmarried former domestic partner is not one of the beneficiaries of a DSO, but the debtor's children are. Nevertheless, the court looked at the substance of the obligation, i.e., one which will benefit the debtor's children, who were the subject of the litigation giving rise to the award. Such is the case here. While the children's mother may be a better provider than the debtor, taking on expensive custody litigation will invariably have an adverse affect on the children, both financially and emotionally. The debtor owes a duty to his children not to take on unnecessary litigation directed at them, so he has to pay for it when he does. The obligation in this case is a domestic support obligation entitled to priority. *See also In re Johnson*, 445 B.R. 50 (Bankr. D. Mass. 2011) (attorney's fees awarded to debtor's former spouse in custody litigation were nondischargeable DSO because incurred to protect children from "frivolous and

10

potentially injurious" conduct of debtor; economic factors also at issue, but state court focused on harm to children caused by litigation).

    For the reasons stated above, the debtor's objection to the claim of Attorney Julie M. Gay is overruled and the claim is allowed as a priority domestic support obligation under 11 U.S.C. § 507(a)(1)(A). A separate order consistent with this decision has been entered.

March 19, 2015

                                      Margaret Dee McGarity
                                      United States Bankruptcy Judge